UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS LOPEZ,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>SCOTT FRAUENHEIM, Warden,<br><br>　　　　　Respondent. | No. 14-cv-02568 GEB AC<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the petition filed on November 3, 2014,[1] ECF No. 1, which challenges petitioner's conviction for two sexual offenses against children under 14 years old, committed when petitioner was 16 years old. Respondent has answered, ECF No. 18, and the time for filing an optional reply has long since expired.

## BACKGROUND

I. Proceedings In the Trial Court

　A. Preliminary Proceedings

The case against petitioner arises from the sexual abuse of 6 and 11 year old children for

---

[1] Because the timeliness of the petition is not in dispute, the court need not consider application of the "prison mailbox rule." See Houston v. Lack, 487 U.S. 266 (1988) (establishing rule that a prisoner's court document is deemed filed on the date the prisoner delivered the document to prison officials for mailing).

1

whom petitioner babysat when he was 16. The children reported that petitioner had forced them to engage in sex acts on many occasions. Petitioner fondled their genitals, licked the penis of the younger child, forced both children to perform oral sex on him, and made them orally copulate each other. He also made the 11 year old penetrate the 6 year old anally. He told the children to keep the sex acts secret, and threatened to hurt them if they reported him. See CT 107-109 (summary of facts from Pre-Plea Report of Probation Officer), 383 (stipulated factual basis for plea).

Petitioner was charged by a six-count criminal complaint filed in Sutter County Superior Court on August 15, 2011. The complaint specially alleged pursuant to Cal. Welfare and Institutions Code § 707(d)(1) that petitioner was a minor who was at least 16 years of age when the offenses were committed.[2] CT 3. An Information followed, CT 21-25, and was later superseded by an Amended Information, CT 158-164.

### B. The Plea and Sentence

On September 24, 2012, petitioner pled no contest to one count of forcible oral copulation of a minor under age 14 (Cal. Penal Code § 288a(c)(2)(B)) and one count of forcible sodomy of a minor under age 14 (Cal. Penal Code § 286(c)(2)(B)). The other charges were dismissed pursuant to plea agreement. Petitioner was sentenced to a stipulated term of 17 years. CT 386 (minute order), 375-85 (felony plea form).

## II. Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on December 11, 2013. Lodged Doc. 3. The California Supreme Court denied review on February 28, 2014. Lodged Doc. 5.

While his direct appeal was pending, with the assistance of appointed counsel, petitioner filed a petition for writ of habeas corpus in the Sutter County Superior Court. Lodged Doc. 6. An Order to Show Cause issued. Lodged Doc. 7. Respondent filed a return, Lodged Doc. 8, and

---

[2] Section 707(d)(1) of the Cal. Welfare and Institutions Code provides that a prosecutor may file charges in a court of criminal jurisdiction, rather than proceeding in juvenile court, when a minor 16 years of age or older is accused of specified offenses that include oral copulation by force and sodomy by force. Cal. Welf. & Inst. Code §§ 707(d)(1), 707(b)(5)&(7).

2

petitioner filed a traverse, Lodged Doc. 9. On May 21, 2014, the superior court summarily denied habeas relief. Lodged Doc. 10. Petitioner next filed his habeas petition in the California Supreme Court, and it was denied on September 17, 2014 without comment or citation. Lodged Doc. 11.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013).

A state court decision is "contrary to" clearly established federal law if the decision

3

"contradicts the governing law set forth in [the Supreme Court's] cases." <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Id.</u> at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. <u>Wiggins v. Smith</u>, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. <u>Id.</u> In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." <u>Id.</u> at 1399. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." <u>Frantz v. Hazey</u>, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In <u>Richter</u>, <u>supra</u>, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. <u>Richter</u>, 131 S. Ct. at 786.

Relief is also available under AEDPA where the state court predicated its adjudication of a claim on an unreasonable factual determination. Section 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court.

DISCUSSION

I. <u>Claim One: Prosecutorial Discretion To Charge A Juvenile As An Adult Violates The Separation Of Powers Doctrine And Due Process</u>

    A. Petitioner's Allegations and Pertinent State Court Record

Pursuant to Cal. Welfare & Institutions Code § 707(d), petitioner was charged as an adult without any prior judicial determination that he was unsuitable for juvenile court. Section 707(d)(1) provides that, with exceptions not relevant here, "the district attorney or other appropriate prosecuting officer may file an accusatory pleading in a court of criminal jurisdiction

4

against any minor 16 years of age or older who is accused of committing an offense enumerated in subdivision (b)." The offenses specified in subdivision (b) include the sex offenses to which petitioner pled guilty. Petitioner contends that Section 707(d) is unconstitutional on separation of powers grounds, and that the failure to provide him with a juvenile fitness hearing violated his right to due process.

### B. The Clearly Established Federal Law

Where a statutory scheme confers the right to a judicial determination of fitness for juvenile court adjudication, the due process clause requires that the determination be made in compliance with the basic procedural protections afforded to similar judicial determinations. Kent v. United States, 383 U.S. 541 (1966). However, the United States Supreme Court has never considered the question whether minors have an underlying constitutional right to a specialized, non-criminal juvenile court or to a judicial determination of fitness for juvenile court adjudication.

### C. The State Court's Ruling

This claim was raised on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

The appellate court ruled as follows:

> Defendant contends the assignment of arbitrary authority to the prosecutor to decide whether to try a juvenile in adult court without any judicial review violates the separation of powers doctrine and due process of law. He acknowledges that the California Supreme Court rejected his argument in *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 554, 557, 559, 561-562, 567, but he raises the issue in order to preserve it for possible federal review. As defendant recognizes, *Manduley* is binding on this court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) We thus conclude the contention lacks merit.

Lodged Doc. 3 at 2.

### D. Objective Reasonableness Under § 2254(d)

If there is no U.S. Supreme Court precedent that controls a legal issue raised by a habeas

5

petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law. Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam). In other words, without governing U.S. Supreme Court precedent there is no "clearly established federal law" within the meaning of 28 U.S.C. § 2254(d), and federal habeas relief is therefore barred. Here petitioner has not identified any U.S. Supreme Court precedent that casts doubt on the constitutional validity of Cal. Welfare & Institutions Code § 707(d), and the court is aware of none. Because there is no "clearly established federal law" recognizing a right to a juvenile fitness hearing, or holding that the constitution forbids prosecutors to charge minors directly in criminal courts, this claim must fail.

Kent v. United States, 383 U.S. 541 (1966), holds that where a statutory scheme confers the right to a judicial determination of fitness for juvenile court adjudication, that determination must comply with the procedural requirements of due process. As the California Supreme Court reasonably held in Manduley v. Superior Court, 27 Cal.4th 537 (2002), Kent has no bearing on the validity of § 707(d) because California does not confer the right to a juvenile fitness hearing in all cases. Id. at 564-66. Kent governs the question of what process must be provided when a legislature creates a statutory right to a fitness hearing; it does not recognize or establish any free-standing constitutional right to such a hearing.

The federal constitution does impose some specific limits on the punishments that may be imposed on juvenile offenders. See Roper v. Simmons, 423 U.S. 551 (2005) (Eighth Amendment forbids death penalty for minors); Graham v. Florida, 560 U.S. 48 (2010) (Eighth Amendment prohibits life without parole for minors in non-homicide cases); Miller v. Alabama, 132 S.Ct. 2455 (2012) (Eighth Amendment prohibits mandatory life without possibility of parole for minors in homicide cases). None of these authorities recognize a due process right to a judicial determination whether a juvenile offender should be adjudicated in juvenile court or criminal court.[3]

---

[3] A California prosecutor's decision to file charges in the criminal division of superior court, rather than initiating juvenile court proceedings, has undeniable sentencing consequences. However, those consequences do not bring petitioner's claim within the scope of Roper, Graham and Miller as he never faced LWOP or a death sentence. Petitioner brings no Eighth Amendment

6

Although petitioner presented this claim on appeal in order to preserve it for federal review, Lodged Doc. 1 (Appellant's Opening Brief) at 8, such review is not available under AEDPA in the absence of "clearly established federal law" supporting the claim. Federal habeas review is not a vehicle through which constitutional law can be developed and rights newly announced. Even before the AEDPA, the non-retroactivity doctrine of <u>Teague v. Lane</u>, 489 U.S. 288 (1989), prohibited the announcement of new rules of constitutional criminal procedure in habeas. State prisoners can obtain federal habeas relief only where the U.S. Supreme Court has already established the right at issue, and the U.S. Supreme Court announces the constitutional rights of state criminal defendants only on certiorari from the judgment of a state's highest court in a direct appeal or state habeas proceeding. Because the U.S. Supreme Court has not recognized the specific right that petitioner here seeks to vindicate, there is no basis for relief.

## II. Claim Two: Petitioner's Plea Was Not Voluntarily And Knowingly Made

### A. Petitioner's Allegations and Pertinent State Court Record

#### 1. The Petition

Petitioner alleges that his no contest plea is constitutionally invalid because the effects of prescribed medication rendered the plea neither voluntary nor knowing. He provides the following statement of supporting facts:

> On September 24, 2012, petitioner entered a plea of no contest to two felony counts in Sutter County Superior Court and was sentenced to 17 years in state prison. At the time he entered the plea he was being held at the Sutter County Juvenile Hall, where he was under the care of the staff psychiatrist, Dr. Ronald Hayman. Dr. Hayman had prescribed anti-anxiety medication and anti-depressants for petitioner and he was taking the medicine at the time he entered his plea. (See copies of Declaration of Petitioner, Jesus Lopez and Declaration of Ronald Hayman, as originally submitted with Petition for Writ of Habeas Corpus in State Court, attached hereto as Exhibits A and B and incorporated herein as if fully set forth.)
>
> Dr. Hayman states his belief that the medication may have had a significant effect upon his ability to fully appreciate and comprehend the legal proceedings he was involved in and legal documents that he may have been asked to execute. (See Declaration of Ronald Hayman, attached hereto as Exhibit B and

---

challenge to his sentence.

> incorporated herein as if fully set forth.)
>
> Petitioner recalls talking to his lawyer and signing some papers and appearing in court, but other than that, the whole process was "largely a blur." Prior to the present case, petitioner had no prior experience with the criminal or juvenile justice system and he had no clue what he was signing and agreeing to. Petitioner avers that if he had not been so medicated, he does not believe that he would have signed the papers and agreed to the plea that he entered in court. (See Declaration of Petitioner, Jesus Lopez, attached hereto as Exhibit A and incorporated herein as if fully set forth; see also Probation Report of January 13, 2012, p. 3 in Case No. CRF11-1745 [Prior Criminal Record].)

ECF No. 1 at 8; see also id. at 10 (Declaration of Petitioner, Jesus Lopez), 11 (Declaration of Ronald Hayman, M.D.); 13 ("Prior Criminal Record" section of pre-plea sentencing report).

Dr. Hayman's declaration states in relevant part:

> As part of my care of Mr. Lopez, I prescribed anti-anxiety medication at that time. While the medication helped Mr. Lopez with his medical condition, I believe it may have had a significant effect upon his ability to fully appreciate and comprehend the legal proceedings he was involved in and legal documents that he may have been asked to execute.

ECF No. 1 at 11.

### 2. The Trial Court Record

Petitioner executed a written plea form, which included waivers of trial rights, petitioner's agreement to the stipulated 17 year sentence, and acknowledgement of the various collateral consequences of sex offense convictions. CT 375-85. Petitioner indicated by initialing in the designated spots that his plea was offered freely and with full understanding of everything in the form, and that he was not under the influence of any drug or medication that affected his ability to understand the nature and consequences of his plea. Id. at 382.

The transcript of the plea colloquy reflects petitioner's affirmative answers to the judge's questions whether the plea was knowing and voluntary. RT 191-94. These statements were made after the judge told petitioner that "at any point before this plea is entered you can say, 'I don't want to do this,' and you can confirm your case for trial. . ." RT 190.

////

////

### 3. The State Habeas Record

The claim submitted in state habeas is identical to that presented here, and was supported by the same declarations of petitioner and Dr. Hayman.

In response to the Order to Show Cause, respondent filed a return that was accompanied by a second declaration from Dr. Hayman. This declaration stated that the first declaration had been prepared at the request of petitioner's distraught mother. Lodged Doc. 8, Exhibit 5 (2014 Hayman Declaration) at 1-2. Dr. Hayman stated that he had prescribed petitioner a low dose of anti-anxiety medication intended to help petitioner "think clearly." Id. at 2. Other medications that petitioner was taking were also prescribed at low doses and were intended to keep petitioner calm and reduce depression. Dr. Hayman stated:

> Jesus Lopez responded well to the medication. . . .
>
> Jesus Lopez was not largely in a blur due to these medications. That is not true because if I had noted that he was overmedicated or was "blurry" or his mind was "foggy", I would have noted in his chart, stopped his medications for ten days and have a medical doctor check for retinal damage and glaucoma and then go from there. This was not done because there is no indication from the charts that Jesus Lopez was experiencing any such symptoms. I believe Jesus Lopez responded well to medications.

Id. at 2-3.

Respondent submitted additional evidence to the state habeas court, including the following:

- A declaration from the medical director of juvenile hall, attesting that petitioner never complained about medication side effects or impaired cognition, and received exceptionally high grades while in school during his detention, id. at Exhibit 6;

- A declaration from the mental health therapist who worked with petitioner in juvenile hall, which describes petitioner as "insightful and logical" in discussing the status of his case on September 24, 2012, immediately after his plea, id. at Exhibit 8, p. 3;

- A declaration from another mental health therapist who met with petitioner in November and December 2012, attesting that he was fully oriented and showed no signs of incoherence, id. at Exhibit 14;

- A declaration from a juvenile hall nurse who interacted with petition on a daily

basis, stating that he never seemed over-medicated or "out of it," and never indicated that things were a "blur," id. at Exhibit 10;

- A declaration from the principal of the juvenile court high school, stating that petitioner "was of clear mind," earned outstanding grades, and engaged in thoughtful conversations throughout the period of September 4 through December 21, 2012, id. at Exhibit 15;

- Declarations from juvenile hall staff describing their interactions with and observations of petitioner, none of whom reported behavior indicating over-medication or impaired cognition, id. at Exhibits 11, 12, 13.

These declarations were accompanied by medical records, juvenile hall logs, and similar supporting documentation.

Petitioner did not submit any additional evidence in his response to the return, Lodged Doc. 9.

### B. The Clearly Established Federal Law

A guilty plea is constitutionally valid to the extent it is "voluntary" and "intelligent." Brady v. United States, 397 U.S. 742, 748 (1970). More specifically, a plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 U.S. 52, 56 (1985). Voluntariness is determined on the basis of all the relevant circumstances. Brady, 397 U.S. at 749. A "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in the constitutional sense unless induced by threats, misrepresentation, or improper promises. Id. at 755. A plea qualifies as intelligent when the criminal defendant first receives "real notice of the true nature of the charges against him." Bousley v. United States, 523 U.S. 614, 618 (1998) (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)).

The standard for competency to plead guilty is the same as the standard for determining competency to stand trial. Godinez v. Moran, 509 U.S. 389, 396-99 (1993). In either context, "the standard for competence. . . is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." Id. at 396 (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam)). Factors relevant to a competency determination

include "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial . . . ." Drope v. Missouri, 420 U.S. 162, 180 (1975).

### C. The State Court's Ruling

The superior court initially issued an order to show cause why relief should not be granted on this claim. Relief was subsequently denied in an order that read, in its entirety, as follows:

> Having reviewed the Petition for Writ of Habeas Corpus, the Return thereto and the Response to the Return, along with the attached declarations, the Court rules that the Petitioner has failed to make a prima facie showing that he is entitled to relief.
>
> The Petition for Writ of Habeas Corpus is **DENIED.**

Lodged Doc. 10.

The California Supreme Court denied the claim without comment or citation. Lodged Doc. 11. This court "looks through" the unexplained denial, and presumes that the California Supreme Court adopted the reasoning of the superior court. See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991); Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). Accordingly, the superior court decision is reviewed for reasonableness under § 2254(d). See Bonner v. Carey, 425 F.3d 1145, 1148 n.13 (9th Cir. 2005).[4]

### D. Objective Reasonableness Under § 2254(d)

The state court's denial of this claim was not objectively unreasonable. Petitioner's allegations that he was unable to enter a constitutionally valid plea due to the effects of medication are unsupported by the record.

First, it is well established that a defendant's representations at the time of his guilty plea,

---

[4] Although the superior court did not set forth its analysis, it plainly stated the reason for its denial: petitioner had not stated a prima facie case. The objective reasonableness of that conclusion is the dispositive question for this court under 28 U.S.C. § 2254(d), whether AEDPA review proceeds on the basis of the superior court order or on the basis of the unexplained denial by the California Supreme Court. That is because summary denial on the merits also indicates a determination that the petitioner has failed to state a prima facie case. See People v. Duvall, 9 Cal. 4th 464, 475 (1995); Cullen v. Pinholster, 131 S. Ct. 1388, 1402 n.12 (2011) (citing In re Clark, 5 Cal. 4th 750, 770 (1993)). When a state court denies a claim for failing to state a prima facie case, the absence of a prima facie case is the determination that must be reviewed for reasonableness under § 2254(d). Nunes v. Mueller, 350 F.3d 1045, 1054-55 (9th Cir. 2003).

as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings," as "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Here, petitioner affirmed both in writing and orally in open court that he understood the nature of the charges and the consequences of his plea. He affirmatively indicated that he was *not* adversely affected by medications. In light of the state habeas record as a whole, which includes the statements of numerous witnesses that petitioner's mental state was not impaired around the time of his plea, it was reasonable for the court to conclude that he had not overcome the presumption of verity.

Second, while petitioner avers that if he had not been medicated he would not have agreed to the plea, he has not presented facts that raise a dispute about voluntariness, intelligence, or competence. As to the voluntary nature of the plea, petitioner does not specifically allege that he was unaware of the consequences or subject to coercion. See Brady, 397 U.S. at 755. As to intelligence, petitioner does not – and could not plausibly – allege that he had not received real notice of the true nature of the charges against him. See Bousley, 523 U.S. at 618. Nor does he allege that he was mentally incompetent to proceed with the plea, lacked the ability to consult with counsel with rational understanding, or was incapable of understanding the proceedings against him. See Godinez, 509 U.S. at 396.

Finally, the evidentiary record overwhelmingly indicates that petitioner was not affected by his medication in a way that compromised the validity of the plea. At the time of the change of plea hearing petitioner was excelling in school, he interacted normally with juvenile hall staff, and he had never reported negative side effects from his medications. Immediately upon return from court after the change of plea hearing, he had an "insightful and logical" conversation with a mental health professional about his plea and what he could expect to happen next. Lodged Doc. 8, Exhibit 8, p. 3.

This court is not responsible for determining whether and to what extent petitioner was affected by his medications on September 24, 2012. It is entirely plausible that petitioner experienced the events as "a blur" for one reason or another, but that is not the standard for the constitutional invalidity of a plea. And the only question for this court under AEDPA is whether

12

the state court's denial of the claim was objectively unreasonable under clearly established U.S. Supreme Court precedent. Because it was not, federal habeas relief is unavailable.

## CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED; August 18, 2017

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE